UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HOWARD D. HARRIS,<br>    Plaintiff,<br><br>  vs.<br><br>SVC MANUFACTURING, INC. and<br>UNITED STEEL WORKERS OF AMERICA<br>#1999,<br>    Defendants. | 1:10-cv-0078-LJM-DKL |

### ORDER ON UNITED STEEL WORKERS OF AMERICA, #1999 MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant's, United Steel Workers of America, #1999 ("Local 1999"), Motion for Summary Judgment against Plaintiff, Howard D. Harris ("Harris"). Harris alleges that Local 1999 discriminated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) by failing to file a grievance for the three day suspension Harris received on October 17, 2008.

### I. BACKGROUND

On May 29, 2000, Harris, an African American, began working for SVC, a beverage manufacturer, at the Indianapolis Distribution Center as a bottle driver. Harris Dep.[1] at 17. In March 2005, Harris was promoted to concentrate batch operator, and he continues to hold that position currently. *Id.* at 28. The batch operator prepares the ingredients for the beverage being manufactured on his particular line, places the ingredients in the line's

---

[1]Harris was deposed by SVC and Local 1999 on separate days. Citations to "Harris Dep." refer to the deposition dated September 23, 2010, while citations to "Harris Un. Dep." refer to the deposition dated November 11, 2010.

tanks, and oversees the mixing of the ingredients in the tank. *Id*.; Harris Dep. at Ex. 2. When the beverage is completely mixed, the batch operator performs analytical testing to check for quality. *Id.* at 44. Once the batch operator confirms the quality of the newly mixed beverage, he or she hits "QA" on the computer to accept the tank for quality and the beverage runs through the distribution lines to machines called "fillers" that fill the bottles with the beverage. *Id.* at 37.

At all times relevant to the case at bar, Local 1999 has represented the hourly production, maintenance, and warehouse employees working in the Indianapolis operations of SVC for collective bargaining purposes. Reed Decl. ¶¶ 1,5. Harris is a member of the bargaining unit. Harris Dep. at 25. Article VII of the collective bargaining agreement between the Union and SVC has a multi-step grievance procedure (the "Grievance Procedure"). Reed Decl. ¶ 10. Step one of the Grievance Procedure provides that any grievance arising between an employee and SVC may be taken up between the affected employee and his or her immediate supervisor. *Id.* ¶ 11. At this step, the employee may elect to request the presence of the Local Union steward. *Id.* If a satisfactory settlement is not reached, the grievance must be reduced to writing and appealed. *Id.* Step two of the Grievance Procedure provides that any appealed grievance must be addressed by SVC Unit official and SVC officials. *Id.* ¶ 12. SVC must provide a written decision on the grievance, and Local 1999 may either accept or appeal it. *Id.* Step three of the Grievance Procedure provides that any appealed grievance must be addressed by the representative of the AFLCIO, or his or her designated representative, the Unit chairperson, and the grievance committee with SVC's Employee Relations Manager, or his or her designated representative. *Id.* ¶ 13. The Union may accept the SVC's answer or appeal the grievance

to arbitration. *Id.* ¶¶ 13-14. The arbitrator is empowered to rule on all disputes pertaining to the interpretation or application of the collective bargaining agreement. *Id.* ¶ 16.

In order for a grievance to be considered timely, it must be reported and taken up with SVC in accordance with the Grievance Procedure within five working days of SVC's action giving rise to the grievance. *Id.* ¶ 17. Otherwise, it is not considered timely under the collective bargaining agreement and cannot be processed through the Grievance Procedure. *Id.* Any grievance not appealed in accordance with the time limits specified by the Grievance Procedure is considered settled on the basis of the last decision. *Id.*

On October 16, 2008, Harris started a new batch of Gatorade in tank one and tank two of his line. Harris Dep. at 79. The new batch was a different flavor, which required Harris to perform a water flush on the tanks. *Id.* at 85. After he performed the flush, his computer screen indicated that both tanks were empty. *Id.* at 79. He looked inside of tank one, the closest tank to him, and it was empty. *Id.* Assuming that tank two was empty, Harris began to batch his Gatorade. *Id.* There actually were 300 gallons of water in tank two, which caused the tank to overflow. *Id.* at 80. The additional 300 gallons of water rendered the batch of Gatorade unusable, and it had to be dumped. *Id.* Dumping the tank also caused Harris' line to be down for about an hour, what SVC refers to as "downtime". *Id.* at 82. The level probe, which indicates what the water level is inside the tank, had been malfunctioning for two years. *Id.* at 83, 100. Harris was aware of the problem. *Id.* at 79-80.

SVC asserts that on October 17, 2008, Harris left his work area and allowed the line to run out of product, causing more downtime. *Id.* at 101. Harris contends that an error in the maintenance from the prior day caused the production on his line to stop for twenty

3

minutes, not the tank running empty. *Id.* The same day, Harris met with two of his supervisors and his union steward, Larry Muex ("Muex"), to discuss disciplinary action that SVC was taking against him for the incidents that occurred on October 16 and 17, 2008. *Id.* at 106. SVC suspended Harris for three days. *Id.* at 106-07.

Muex is not a full time official for Local 1999. Muex Decl. ¶ 14. Based on what Muex heard during the meeting, and his understanding of the facts, he did not believe that SVC violated the collective bargaining agreement by disciplining Harris. *Id.* ¶ 12. Muex told Harris to come see him later that day to discuss the facts further in order for Muex to properly determine whether he should file a grievance on Harris' behalf to challenge the discipline. *Id.* ¶ 13. Harris did not return that day to talk to Muex. Harris Un. Dep. at 37-38. As a result of his understanding of the facts and his attendance at the disciplinary meeting, Muex did not file a grievance on Harris' behalf. Muex Decl. ¶¶ 2, 14, 19.

Harris served his three day suspension. Harris Dep. at 110-12. After that, his line was laid off for two weeks. *Id.* As a result, Harris did not return to work for ten days following the October 17, 2008 discipline, and in that time he did not speak to Muex. *Id.* Harris asserts alternatively that he failed to contact Muex because Muex gave him inaccurate contact information and that Harris did not have any of Muex's contact information. *See* Harris Dep. at 110-11; Harris Un. Dep. at 37-38. On or around October 30, 2008, after Harris returned to work, he asked Muex whether a grievance had been filed. Harris Dep. at 110-11. Muex told him that he had not filed a grievance. *Id.* Harris then approached SVC unit Local 1999 official Pam Turner regarding the grievance. Harris Un. Dep. 40. Turner followed up with SVC unit Local 1999 official Dave Keen. *Id.* at 43-44. Turner advised Harris that in order to be timely, a grievance had to be filed within five

4

working days of the incident giving rise to the grievance and because his was not filed within five working days his challenge of SVC's disciplinary action was a "moot point." *Id.*

The Court will include additional facts as necessary below.

## II. **STANDARD**

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267–68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(a), which provides in relevant part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials showing that a fact either is or cannot be genuinely disputed. Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence

to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). If the moving party does not have the ultimate burden of proof on a claim, it is sufficient for the moving party to direct the court to the lack of evidence as to an element of that claim. *See Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 & n.3 (7th Cir. 1994). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### III. **DISCUSSION**

In his Response Brief in Opposition against the instant Motion, Harris narrows his claims against Local 1999 to whether Local 1999 discriminated against Harris on the basis of his race when it failed to file a grievance regarding Harris' October 2008 suspension.

*See* Resp. at 4 (noting that with regard to the 2004, 2005, and 2006 incidents "Harris has not made these allegations in either his Complaint or his EEOC charge" and further noting that the "ultimate question" in the case concerns the October 2008 suspension). To the extent that Harris makes claims that Local 1999 violated Title VII by incidents that occurred in 2004, 2005, and 2006, he has waived those claims by failing to respond to Local 1999's briefing on those points. *Palmer v. Marion Cnty.*, 327 F.3d 588, 597-98 (7th Cir. 2003) (a party opposing summary judgment waives claims to which it fails to respond or develop on summary judgment).

Local 1999 asserts that the Court should grant summary judgment on Harris' remaining claim because Harris cannot establish that Local 1999 discriminated against him because of his race in violation of Title VII. Harris may establish discriminatory intent through either the direct method or indirect burden shifting method of proof. *See Brown v. Ill. Dep't Natural Res.*, 499 F.3d 675, 681 (7th Cir. 2007). Harris elects to proceed on the indirect burden shifting method of proof. In order to defeat summary judgment under this method, Harris must first prove a prima facie case of discrimination. *Anders v. Waste Mgmt. of Wis., Inc.*, 463 F.3d 670, 676 (7th Cir. 2006). In order to make out his prima facie case against Local 1999, Harris must show: (1) the employer violated its collective bargaining agreement with the union; (2) the union breached its own duty of fair representation by letting the breach go unrepaired; and (3) evidence of animus against the plaintiff based upon his or her race. *Greenslade v. Chi. Sun-Times, Inc.*, 112 F.3d 853, 866 (7th Cir. 1997). Despite citing *Greenslade* for the three prongs of his prima facie case, Harris fails to cite any evidence or make any argument that SVC violated its collective bargaining agreement with Local 1999 when it disciplined Harris in October 2008. Harris'

7

failure to establish a prong of his prima facie case entitles Local 1999 is to summary judgment on Harris' remaining claim. *See id.*

### IV. **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendant's, United Steel Workers of America, #1999, Motion for Summary Judgment against Plaintiff, Howard D. Harris in its entirety.

IT IS SO ORDERED this 22nd day of June, 2011.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Gregory P. Gadson
LEE COSSELL KUEHN & LOVE LLP
ggadson@nleelaw.com

Robert Adam Hicks
MACEY SWANSON & ALLMAN
rhicks@maceylaw.com

Cherry Malichi
LEE COSSELL KUEHN & LOVE LLP
cmalichi@nleelaw.com

William H. Schmelling
UNITED STEELWORKERS OF AMERICA #1999
wschmelling@usw.org

Richard J. Swanson
MACEY SWANSON AND ALLMAN
rswanson@maceylaw.com

Amy Suzanne Wilson
FROST BROWN TODD LLC
awilson@fbtlaw.com

Heather L. Wilson
FROST BROWN TODD LLC
hwilson@fbtlaw.com